## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., | ) ) | |
| JEFFREY KAYDEN, *and* | ) ) | |
| BOB'S LITTLE SPORT SHOP, INC., | ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| PHILIP D. MURPHY, in his official capacity as the Governor of New Jersey. | ) ) ) | Civil Action No. 1:20-cv-3269 |
| GURBIR S. GREWAL, in his official capacity as Attorney General of New Jersey, *and* | ) ) ) ) | |
| PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police and as State Director of Emergency Management, | ) ) ) ) ) | |
| *Defendants*. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

David H. Thompson*
Peter A. Patterson*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com

Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com

*Pro hac vice* application
forthcoming

*Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Association of New Jersey Rifle & Pistol Clubs, Inc.
5 Sicomac Road
Suite 292
North Haledon, New Jersey 07508

Jeffrey Kayden
12 Sylvan Trail
Kinnelon, NJ 07405

Bob's Little Sport Shop
316 Delsea Drive
Glassboro, NJ 08028

Philip D. Murphy
Office of the Governor
The State House
P.O. Box 001
Trenton, NJ 08625

Gurbir S. Grewal
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street, Box 080
Trenton, NJ 08625

Patrick J. Callahan
Office of the Superintendent
New Jersey State Police
P.O. Box 7068
West Trenton, NJ 08628

## INTRODUCTION

Plaintiffs the Association of New Jersey Rifle & Pistol Clubs, Inc., Jeffrey Kayden, and Bob's Little Sport Shop, Inc. (collectively "Plaintiffs"), by and through their undersigned attorneys, file this Complaint against the above-captioned Defendants, in their official capacities as the Governor of New Jersey, the Attorney General of New Jersey, and the Superintendent of the New Jersey Division of State Police and State Director of Emergency Management for their acts of administering and enforcing the Governor's unconstitutional ban on firearm sales. Plaintiffs seek declaratory and injunctive relief: a declaration that Executive Order 107 ("EO 107") (attached as Exhibit 1) violates the Second and Fourteenth Amendments to the extent it operates to prohibit the purchase and sale of firearms and ammunition; a declaration that Defendants' policy or practice of making the State Police National Instant Criminal Background Check ("NICS") portal unavailable violates the Second and Fourteenth Amendments; and an injunction prohibiting the enforcement of these unconstitutional policies. In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

1.      This lawsuit challenges Defendants' actions mandating and enforcing the closure of all retail businesses that sell firearms or ammunition and discontinuing the NICS firearms background check system in the State of New Jersey. These actions effectively ban law-abiding citizens from obtaining firearms or ammunition in the State of New Jersey.

2.      Prohibiting the sale and purchase of firearms and ammunition is akin to prohibiting the exercise of Second Amendment rights altogether. That is because "simple acquisition" is "the *most fundamental* prerequisite of legal gun ownership." *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 938 (N.D. Ill. 2014). The Third Circuit accordingly has

recognized that "prohibiting the commercial sale of firearms" is an "untenable" proposition. *United States v. Marzzarella*, 614 F.3d 85, 92 (3d Cir. 2010).

3.      Despite the centrality of acquisition to Second Amendment rights, Governor Murphy has banned that activity throughout the State of New Jersey with the stroke of a pen, effectively preventing millions of citizens from obtaining a firearm for the first time. Governor Murphy's ban is flatly contrary to the Second Amendment. Governor Murphy's statements following the enactment of EO 107 have demonstrated that the Order is grounded in antipathy to Second Amendment rights. Governor Murphy recently remarked on his decision to classify firearm retailers as non-essential that "[a] safer society for my taste has fewer guns and not more guns." *See* Alex Napoliello, *Gun Advocates Say Shops Should Reopen Now. Murphy Says No*, NJ.COM (March 25, 2020), https://bit.ly/2JlbRFP.

4.      The existence of the COVID-19 pandemic does not justify Governor Murphy's actions. Plaintiffs recognize that the pandemic presents significant and urgent problems for state officials seeking to ensure the safety and well-being of citizens of New Jersey. But the face of EO 107 refutes any assertion that COVID-19 requires New Jersey to shut down gun stores. The Order expressly exempts as "essential retail businesses" liquor stores, medical marijuana dispensaries (entities that operate in flagrant violation of federal law), convenience stores, and pet stores, among others. Second Amendment rights, as a matter of law, are at least as "essential" as the activities supported by these businesses, and gun stores can be operated in an equally sanitary manner by following social distancing and other required protocols.

5.      EO 107 also privileges other constitutional rights, exempting religious and political activities from the stay-at-home order. But the Second Amendment is not a "second-class right"

that can be "singled out for special—and specially unfavorable—treatment." *McDonald v. City of Chicago*, 561 U.S. 742, 778–79, 780 (2010).

6.      To make matters worse, EO 107 bans Second Amendment activity at the precise moment when the right to keep and bear arms is most essential. As is true in many States, the citizens of New Jersey face unprecedented social disruption due to the COVID-19 emergency. Police forces, strained to their breaking point by infection and scarcity of resources, must now also enforce a lockdown order and, as a result, have begun to prioritize policing more serious crimes. At the same time, public acts of lawlessness are becoming increasingly common and state officials have taken the unprecedented step of releasing inmates back onto the streets. The importance of recognizing and protecting the fundamental right of law-abiding citizens to self-defense has never been higher. "The Second Amendment is a doomsday provision," *Silveira v. Lockyer*, 328 F.3d 567, 570 (9th Cir. 2003) (Kozinksi, J., dissenting from denial of rehearing en banc), and in this time of crisis Americans across the Nation are preparing for the worst by acquiring arms for the defense of themselves and their families. The law-abiding, responsible citizens of New Jersey have the right to do the same.

## VENUE AND JURISDICTION

7.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343.

8.      The Court has personal jurisdiction over the Defendants because each acted, acts, and threatens to act under the color of the laws of the State of New Jersey and each did so, does so and threatens to do so within the geographic confines of the State and District of New Jersey.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)–(2).

## PARTIES

10.     Plaintiff Association of New Jersey Rifle & Pistol Clubs, Inc. (the "ANJRPC") is a not for profit membership corporation, incorporated in the State of New Jersey in 1936 and represents its members. Its address is 5 Sicomac Road, Suite 292, North Haledon, New Jersey 07508. ANJRPC represents the interests of target shooters, hunters, competitors, outdoors people and other law-abiding firearms owners. Among the ANJRPC's purposes is aiding such persons in every way within its power and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms and ammunition. EO 107's ban on firearm and ammunition sales are thus a direct affront to ANJRPC's central mission. ANJRPC has many thousands of members who reside in New Jersey. ANJRPC brings the claims herein on behalf of its members. Plaintiff Kayden is a member and Plaintiff Bob's Little Sport Shop ("BLSS") is a  member club of ANJRPC.

11.     Plaintiff Jeffrey Kayden is a citizen of the United States and a resident and citizen of the State of New Jersey. He resides at 12 Sylvan Trail, Kinnelon, NJ 07405.

12.     Plaintiff BLSS is retail dealer in firearms that is licensed under both federal law and New Jersey law to engage in business as such. BLSS is located at 316 Delsea Drive, Glassboro, NJ 08028.

13.     Defendant Philip D. Murphy is the Governor of the State of New Jersey, and he is named as a defendant in his official capacity as such. As Governor, he executed EO 107 at issue in this challenge and is responsible for its continued efficacy.

14.     Defendant Gurbir S. Grewal is the Attorney General of the State of New Jersey, and he is named as a defendant in his official capacity as such. As the chief law enforcement officer of the State of New Jersey, the Attorney General exercises, delegates, or supervises all the powers

and duties of the New Jersey Department of Law and Public Safety, including the enforcement of N.J.S.A. App. A: 9–49, which imposes penalties for violations of EO 107.

15.    Defendant Patrick J. Callahan is the State Director of Emergency Management in New Jersey and is also the Superintendent of the New Jersey State Police, and he is named as a defendant in his official capacity as such. As Director of Emergency Management, Callahan is responsible for implementing certain aspects of EO 107, including its list of essential retail businesses. As Superintendent of the New Jersey State Police, Defendant Callahan is responsible for supervising the New Jersey State Police, which enforces the provisions of EO 107 through arrests. Defendant Callahan is also responsible for the decision by the State Police to make the NICS background check portal unavailable.

## FACTUAL ALLEGATIONS

### Pertinent Statutes and Regulations

16.    It is illegal to purchase a long gun (rifle or shotgun) in New Jersey unless an individual holds a Firearms Purchaser Identification card ("FID Card"). *See* N.J.S.A. § 2C:58-3(b)(1).

17.    It is illegal to purchase a handgun in New Jersey unless an individual has a valid permit to purchase a handgun. *See* N.J.S.A. § 2C:58-3(a)(1).

18.    To obtain a permit to purchase a handgun or an FID Card, a person generally must submit fingerprints and pass a background check investigation conducted by local police authorities. *See* N.J.S.A. § 2C:58-3(e)–(f). Police cannot issue a permit to purchase a handgun or an FID Card to any person who (inter alia) has been convicted of a crime, confined to a mental institution, subjected to a restraining order, or who is under the age of 18. *See id.* § 2C:58-3(c).

19.     It is also illegal to purchase a firearm in New Jersey unless the transaction is conducted "through a licensed retail dealer" in firearms after the FID Card and/or permit to purchase a handgun has been obtained. N.J.S.A. § 2C:58-3(a)(2), (b)(2). A licensed retail dealer may sell firearms "only in the building or buildings designated in the[ir] license." *Id.* § 2C:58-2(a)(1).  A licensed retail dealer is obliged to complete an additional background check through the NICS before consummating a firearm transaction at the point of purchase. *Id.* § 2C:58-3(a)(3), (b)(3); *see also id.* 18 U.S.C. § 922(t); N.J.A.C. §§ 13:54-3.12, 13:54-3.13(a)(6).

20.     New Jersey law requires the Division of State Police to conduct the NICS background checks in connection with firearm sales. N.J.A.C. §§ 13:54-1.2, 13:54-3.12, 13:54-3.13(a)(6), 13:54-3.19.

21.     State police regulations provide that firearm ammunition may only be sold by a licensed firearm dealer. N.J.A.C. § 13:54-3.2.

### EO 107 and the Closure of the NICS Background Check Portal

22.      COVID-19 has caused a pandemic that is spreading throughout the world, including the United States and the State of New Jersey. Public officials are taking action to attempt to contain and mitigate this illness. It is unclear how long it will take for this pandemic illness to run its course, but many leading public health experts have estimated that containment measures may need to be in place for 18 or more months.

23.     On March 21, 2020, Defendant Governor Murphy issued EO 107, which (pertinently) ordered that "[t]he brick-and-mortar premises of all non-essential retail businesses must close to the public as long as this Order remains in effect." EO 107 at 6. EO 107 did not include licensed firearms dealers in its list of "essential" businesses, meaning that they must be "close[d] to the public" for the duration of the order, which has no expiration date. *Id.*

24.     However, included in the list of "essential" businesses are liquor stores, medical marijuana dispensaries, convenience stores, and pet stores, among others. This means that New Jersey citizens can obtain nearly any imaginable item through in-person or online purchases while EO 107 is in effect. But EO 107 effectively prohibits the purchase of firearms or ammunition, as firearms retailers are no longer open to the public and New Jersey's regulatory system mandates in-person firearm and ammunition purchases.

25.     EO 107 also mandates that

> [a]ll New Jersey residents shall remain home or at their place of residence unless they are 1) obtaining goods or services from essential retail businesses . . .; 2) obtaining takeout food or beverages from restaurants, other dining establishments, or food courts . . .; 3) seeking medical attention, essential social services, or assistance from law enforcement or emergency services; 4) visiting family or other individuals with whom the resident has a close personal relationship . . .; 5) reporting to, or performing, their job; 6) walking, running, operating a wheelchair, or engaging in outdoor activities with immediate family members, caretakers, household members, or romantic partners while following best social distancing practices with other individuals, including staying six feet apart; 7) leaving the home for an educational, religious, or political reason; 8) leaving because of a reasonable fear for his or her health or safety; or 9) leaving at the direction of law enforcement or other government agency.

EO 107 at 5.

26.     Several other Governors have issued similar orders closing non-essential business but have exempted firearm and ammunition suppliers and retailers as essential. Those states include: Arizona, Connecticut, Illinois, Louisiana, Ohio, and Wisconsin. While the Governor of Pennsylvania initially excluded firearms dealers from the state's list of "essential businesses," on March 24, 2020, the Governor revised the policy to allow firearms dealers to "operate physical businesses on a limited basis to complete only the portions of a sale/transfer that must be conducted in-person under the law," subject to restrictions that minimize social interactions and require that dealers implement social distancing, sanitization, and other mitigation measures to protect the

public and employees. *See* Governor Tom Wolf, Industry Operation Guidance (Mar. 24, 2020), https://bit.ly/3bnifZl.

27.     Although EO 107 did not address the NICS firearms background checks that the Division of State Police conducts, shortly after Defendant Governor Murphy issued the order, the Division of State Police posted a notice on the NICS background check portal of its website indicating that the State Police would no longer conduct the background checks. Since the end of March 21, 2020, it has been impossible to submit a NICS background check to the Division of State Police for approval.

### Defendants' Actual and Threatened Enforcement of the Challenged Laws, Policies, and Practices and Its Injury to the Plaintiffs

28.     Plaintiff ANJRPC has many thousands of members who reside in New Jersey. Among the ANJRPC's purposes is aiding such persons in every way within its power and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms and ammunition. ANJRPC has numerous members who wish to purchase firearms and ammunition but are unable to do so because of EO 107 and the closure of the NICS background check portal, although they satisfy all other requirements for owning firearms and ammunition under New Jersey law. But for Defendants' enforcement of EO 107 and closure of the background check portal, those members would forthwith purchase firearms and ammunition. Likewise, ANJRPC has as a member club at least one licensed retail firearm business that is unable to sell firearms and ammunition because of EO 107 and the closure of the NICS background check portal. But for Defendants' continued enforcement of EO 107 and closure of the NICS background check portal, that member club would forthwith engage in the retail sale of firearms and ammunition.

29.     Plaintiff Kayden does not own any firearms. He has obtained an FID Card and permit to purchase a handgun, which authorize him to purchase a long gun and handgun, respectively, under New Jersey law. He recently decided to purchase a handgun and a shotgun to protect himself and his family. In light of the current emergency situation, he believes it is especially important that he is in a position to defend his family with a firearm if necessary.

30.     Because state law requires any firearm purchase to be consummated through a licensed firearm retailer, on the retailer's premises, and because EO 107 has compelled all firearm retailers in the State to close, Plaintiff Kayden is unable to lawfully acquire a firearm.

31.     Because federal and state law mandate a NICS background check conducted by the Division of State Police prior to any firearm purchase, and because Defendant Callahan has directed the State Police to cease performing background checks, Plaintiff Kayden is unable to lawfully acquire a firearm.

32.     But for the terms of EO 107 and the decision to discontinue NICS background checks, Plaintiff Kayden would acquire a firearm and ammunition for that firearm forthwith.

33.     Plaintiff BLSS is a retail dealer in firearms that is licensed under both federal law and New Jersey law to engage in business as such.

34.     As the COVID-19 pandemic unfolded, BLSS experienced a significant increase in the number of both new and returning customers and many have expressed grave concern over the developing emergency.

35.     Now that EO 107 has taken effect, BLSS is no longer open to the public, as EO 107 purports not to acknowledge firearm retailers as "essential businesses."

36.     Since EO 107 took effect, and since the Division of State Police made the NICS background check portal unavailable, individuals have contacted BLSS and expressed their desire

to purchase firearms and ammunition for the purpose of personal protection. BLSS has advised these people that it is no longer possible to sell (or purchase) firearms or ammunition in New Jersey.

37.     Furthermore, even if BLSS could sell firearms and ammunition under EO 107, it could not initiate and complete the required NICS background check because the Division of State Police has made the background check portal unavailable.

38.     If BLSS could sell firearms and ammunition under EO 107, it would reopen. In doing so, BLSS could and would implement important sanitary and safety procedures, including limiting the number of customers in the store at any one time, strictly observing and enforcing social distancing protocols, providing and requiring customers to wear latex or nitrile gloves when handling firearms or ammunition, and regularly sanitizing exposed surfaces.

## COUNT ONE

### 42 U.S.C. § 1983 Action for Deprivation of
### Plaintiffs' Rights under U.S. CONST. amends. II and XIV

39.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

40.     The Second Amendment applies to New Jersey by operation of the Fourteenth Amendment.

41.     The Second Amendment, as incorporated against New Jersey, protects the right to acquire an operative firearm, and the ammunition needed to operate it, for lawful purposes including the core lawful purpose of self-defense.

42.     Defendants' acts of prohibiting the operation of retail firearms businesses without regard to their manner of operation prohibit law-abiding individuals from purchasing

firearms or ammunition for the purpose of protecting themselves and their families (or for any other purpose). By their terms, these acts stand as a bar on firearms ownership.

43.     Defendants' acts of foreclosing any ability to access the NICS background check portal prohibit law-abiding individuals from purchasing firearms for the purpose of protecting themselves and their families (or for any other purpose). By their terms, these acts stand as a bar on firearms ownership.

44.     While state and local governments have the power to reasonably regulate the keeping and bearing of arms, they do not have the power to *prohibit* the keeping and bearing of arms, nor do they have the power to close the channels of distribution by which people *obtain* firearms and ammunition.

45.     Defendant Murphy's directive (in EO 107) that all dealers in firearms and ammunition must close themselves to the public, without exception, stands as a ban on purchasing firearms and ammunition.

46.     Defendants' policy or practice of making the State Police NICS background check portal unavailable also stands as a ban on purchasing firearms and ammunition.

47.     Defendants' ongoing enforcement of EO 107, as well as their ongoing policy or practice of making the State Police NICS background check portal unavailable, prevents the Plaintiffs and/or the Plaintiffs' members from purchasing and selling firearms and ammunition, thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

i.      a declaratory judgment that EO 107 violates the Second and Fourteenth Amendments to the extent it prohibits the purchase and sale of firearms and ammunition;

ii.     a declaratory judgment that Defendants' policy or practice of making the

State Police NICS background check portal unavailable violates the Second and Fourteenth Amendments;

iii.    a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing EO 107 to the extent it prohibits the purchase and sale of firearms and ammunition;

iv.    a preliminary and/or permanent injunction directing Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, to make the State Police NICS background check portal available;

v.    such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

vi.    attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: March 25, 2020                                      Respectfully submitted,

David H. Thompson*                                      s/Daniel L. Schmutter
Peter A. Patterson*                                        Daniel L. Schmutter
COOPER & KIRK, PLLC                                 HARTMAN & WINNICKI, P.C.
1523 New Hampshire Avenue, N.W.            74 Passaic Street
Washington, D.C. 20036                             Ridgewood, New Jersey 07450
(202) 220-9600                                           (201) 967-8040
(202) 220-9601 (fax)                                  (201) 967-0590 (fax)
dthompson@cooperkirk.com                      dschmutter@hartmanwinnicki.com

    *Pro hac vice application forthcoming

                        Attorneys for Plaintiffs

### DECLARATION OF COUNSEL PURSUANT TO LOCAL CIV. R. 11.2

The undersigned hereby states that the matter in controversy challenges the same conduct

of Defendants as the following action pending in the District of New Jersey: *Kashinksy v. Murphy*,

No. 20-cv-03127.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2020

<div style="margin-left: 50%;">

s/Daniel L. Schmutter
Daniel L. Schmutter
Hartman & Winnicki, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com

*Attorney for Plaintiffs*

</div>

# EXHIBIT 1

**EXECUTIVE ORDER NO. 107**

WHEREAS, through Executive Order No. 102 (2020), which I signed on February 3, 2020, I created the State's Coronavirus Task Force, chaired by the Commissioner of the New Jersey Department of Health ("DOH"), in order to coordinate the State's efforts to appropriately prepare for and respond to the public health hazard posed by Coronavirus disease 2019 ("COVID-19"); and

WHEREAS, in light of the dangers posed by COVID-19, I issued Executive Order No. 103 (2020) on March 9, 2020, the facts and circumstances of which are adopted by reference herein, which declared both a Public Health Emergency and State of Emergency; and

WHEREAS, in accordance with N.J.S.A. App. A:9-34 and -51, I reserved the right to utilize and employ all available resources of State government to protect against the emergency created by COVID-19; and

WHEREAS, in accordance with N.J.S.A App. A:9-40, I declared that, due to the State of Emergency, no municipality, county, or any agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution which will or might in any way conflict with any of the provisions of my Executive Orders, or which will in any way interfere with or impede their achievement; and

WHEREAS, to further protect the health, safety, and welfare of New Jersey residents by, among other things, reducing the rate of community spread of COVID-19, I issued Executive Order No. 104 (2020) on March 16, 2020, the facts and circumstances of which are also adopted by reference herein, which established statewide social mitigation strategies for combatting COVID-19; and

2

WHEREAS, Executive Order No. 104 (2020) limited the scope of service and hours of operation for restaurants and certain retail establishments to balance the need to allow individuals to access food and other essential materials with the need to limit unnecessary person-to-person contact; and

WHEREAS, Executive Order No. 104 (2020) deemed a subset of businesses as "essential," including grocery/food stores, pharmacies, medical supply stores, gas stations, healthcare facilities, and ancillary stores within healthcare facilities, and it authorized the State Director of Emergency Management, who is the Superintendent of State Police, to make additions, amendments, clarifications, exceptions, and exclusions to that list; and

WHEREAS, Executive Order No. 104 (2020) made clear that such essential businesses may continue operating without limits on their scope of service or hours of operation, absent further amendments by the State Director of Emergency Management; and

WHEREAS, Executive Order No. 104 (2020) and subsequent Administrative Orders issued by the State Director of Emergency Management also placed restrictions on other businesses' scope of service and hours of operation, and also placed restrictions on the size of gatherings in the State; and

WHEREAS, as of March 20, 2020, according to the Centers for Disease Control and Prevention ("CDC"), there were more than 234,000 confirmed cases of COVID-19 worldwide, with over 9,800 of those cases having resulted in death; and

WHEREAS, as of March 20, 2020, there were more than 15,000 confirmed cases of COVID-19 in the United States, with at least 201 of those cases having resulted in death; and

WHEREAS, as of March 20, 2020, there were at least 890 positive cases of COVID-19 in New Jersey, with at least 11 of those cases having resulted in death; and

3

WHEREAS, social mitigation strategies for combatting COVID-19 require every effort to reduce the rate of community spread of the disease; and

WHEREAS, the CDC has advised that COVID-19 spreads most frequently through person-to-person contact when individuals are within six feet or less of one another; and

WHEREAS, as a result, the CDC has recommended that individuals practice "social distancing" to prevent community spread of the virus; and

WHEREAS, the CDC has defined social distancing as the practice of "remaining out of congregate settings, avoiding mass gatherings, and maintaining distance (approximately 6 feet or 2 meters) from others when possible"; and

WHEREAS, to mitigate community spread of COVID-19, it is necessary to limit the unnecessary movement of individuals in and around their communities and person-to-person interactions in accordance with CDC and DOH guidance; and

WHEREAS, the best way for New Jersey residents to keep themselves, their families, and their communities safe during the COVID-19 outbreak is to stay at home as much as possible; and

WHEREAS, as of March 15, 2020, the CDC recommends that for the next eight weeks, gatherings of 50 or more people be canceled or postponed throughout the United States; and

WHEREAS, as of March 16, 2020, the White House went further than the CDC had and recommended that Americans avoid social gatherings in groups of more than 10 people; and

WHEREAS, restricting the physical presence of individuals in office environments and work sites is critical to preventing future spread of COVID-19; and

4

WHEREAS, accommodating work-from-home arrangements is an effective means to ensure continuity of operations while also limiting person-to-person contact; and

WHEREAS, the CDC has recommended employers to establish policies and practices to increase the physical distance among employees and between employees; and

WHEREAS, permitting the workforce to work from home may reduce stress on the State's child care system; and

WHEREAS, as of March 19, 2020, I have instructed all State departments and agencies to utilize work-from-home arrangements for both essential and non-essential employees wherever feasible; and

WHEREAS, given the rapidly rising incidence of COVID-19, temporarily closing non-essential retail businesses will strengthen New Jersey's efforts to slow the spread of COVID-19; and

WHEREAS, even as we institute social distancing measures, the number of COVID-19 cases in New Jersey is likely to increase for the immediate future, meaning we must take all possible steps to preserve our health care system's capacity to treat those who require emergency or intensive care; and

WHEREAS, the Constitution and statutes of the State of New Jersey, particularly the provisions of N.J.S.A. 26:13-1 et seq., N.J.S.A. App. A: 9-33 et seq., N.J.S.A. 38A:3-6.1, and N.J.S.A. 38A:2-4 and all amendments and supplements thereto, confer upon the Governor of the State of New Jersey certain emergency powers, which I have invoked;

NOW, THEREFORE, I, PHILIP D. MURPHY, Governor of the State of New Jersey, by virtue of the authority vested in me by the Constitution and by the Statutes of this State, do hereby ORDER and DIRECT:

5

1.   The operative paragraphs of Executive Order No. 104 (2020) are hereby superseded in full.  The factual findings of Executive Order No. 104 (2020) remain applicable except to the extent they are in conflict with the factual findings in this or any intervening Executive Order.

2.   All New Jersey residents shall remain home or at their place of residence unless they are 1) obtaining goods or services from essential retail businesses, as described in Paragraph 6; 2) obtaining takeout food or beverages from restaurants, other dining establishments, or food courts, pursuant to Paragraph 8; 3) seeking medical attention, essential social services, or assistance from law enforcement or emergency services; 4) visiting family or other individuals with whom the resident has a close personal relationship, such as those for whom the individual is a caretaker or romantic partner; 5) reporting to, or performing, their job; 6) walking, running, operating a wheelchair, or engaging in outdoor activities with immediate family members, caretakers, household members, or romantic partners while following best social distancing practices with other individuals, including staying six feet apart; 7) leaving the home for an educational, religious, or political reason; 8) leaving because of a reasonable fear for his or her health or safety; or 9) leaving at the direction of law enforcement or other government agency.

3.   When in public, individuals must practice social distancing and stay six feet apart whenever practicable, excluding immediate family members, caretakers, household members, or romantic partners.

4.   Individuals who have to travel pursuant to Paragraph 2 should only use public transportation only if they have no other feasible choice.  Individuals who ride public transportation should abide by best social distancing practices, including making

6

all efforts to stand or sit six feet away from other riders and frequently use sanitizing products.

5.   Gatherings of individuals, such as parties, celebrations, or other social events, are cancelled, unless otherwise authorized by any part of this Order.  The State Director of Emergency Management, who is the Superintendent of the State Police, shall have the discretion to make clarifications and issue orders related to this provision.

6.   The brick-and-mortar premises of all non-essential retail businesses must close to the public as long as this Order remains in effect.  Essential retail businesses, listed below, are excluded from this directive and may remain open during their normal business hours.  Essential retail businesses must, wherever practicable, provide pickup services outside or adjacent to their stores for goods ordered in advance online or by phone. Additionally, online and telephonic delivery services are permitted to the extent the retail business is authorized to operate an online or telephonic delivery service under existing law.  The State Director of Emergency Management, who is the Superintendent of the State Police, shall have the discretion to make additions, amendments, clarifications, exceptions, and exclusions to this list:

> a.   Grocery stores, farmer's markets and farms that sell directly to customers, and other food stores, including retailers that offer a varied assortment of foods comparable to what exists at a grocery store;
>
> b.   Pharmacies and alternative treatment centers that dispense medicinal marijuana;
>
> c.   Medical supply stores;
>
> d.   Retail functions of gas stations;

7

      e.   Convenience stores;

      f.   Ancillary stores within healthcare facilities;

      g.   Hardware and home improvement stores;

      h.   Retail functions of banks and other financial institutions;

      i.   Retail functions of laundromats and dry-cleaning services;

      j.   Stores that principally sell supplies for children under five years old;

      k.   Pet stores;

      l.   Liquor stores;

      m.   Car dealerships, but only to provide auto maintenance and repair services, and auto mechanics;

      n.   Retail functions of printing and office supply shops; and

      o.   Retail functions of mail and delivery stores.

7.  Any essential retail business whose brick-and-mortar premises remain open to the public shall abide by social distancing practices to the extent practicable while providing essential services. These include all reasonable efforts to keep customers six feet apart and frequent use of sanitizing products on common surfaces.

8.  All restaurants, cafeterias, dining establishments, and food courts, with or without a liquor license, all bars, and all other holders of a liquor license with retail consumption privileges, are permitted to operate their normal business hours, but are limited to offering only food delivery and/or take-out services in accordance with their existing liquor licenses. If alcoholic beverages are to be sold from a restaurant, dining establishment or bar with a liquor license, such sales shall be

8

limited to original containers sold from the principal public barroom. The on-premises consumption of alcohol is prohibited. All retail sales of alcoholic beverages by limited brewery licensees, restricted brewery licensees, plenary and farm winery licensees (and associated salesrooms), craft distillery licensees and cidery and meadery licensees must be in original containers and must be sold through customer pick up and/or delivered by licensees in accordance with their existing licenses.

9.   All recreational and entertainment businesses, including but not limited to the following list, must close to the public as long as this Order remains in effect. The State Director of Emergency Management, who is the Superintendent of State Police, shall have the discretion to make additions, amendments, clarifications, exceptions, and exclusions to this list:

a.   Casino gaming floors, including retail sports wagering lounges, and casino concert and entertainment venues. Online and mobile sports and casino gaming services may continue to be offered notwithstanding the closure of the physical facility.

b.   Racetracks, including stabling facilities and retail sports wagering lounges. Mobile sports wagering services may continue to be offered notwithstanding the closure of the physical facility.

c.   Gyms and fitness centers and classes.

d.   Entertainment centers, including but not limited to, movie theaters, performing arts centers, other concert venues, and nightclubs.

e.   All indoor portions of retail shopping malls. Restaurants and other stores located within

9

shopping malls that have their own external entrances open to the public, separate from the general mall entrance, may remain open pursuant to the terms and directives of this Order for operating hours and takeout or food delivery services. All entrances and exits to the common area portions of retail shopping malls must remain closed.

f. All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement parks, water parks, aquariums, zoos, arcades, fairs, children's play centers, funplexes, theme parks, bowling alleys, family and children's attractions.

g. Facilities where personal care services are performed that, by their very nature, result in noncompliance with social distancing guidelines, including but not limited to cosmetology shops; barber shops; beauty salons; hair braiding shops; nail salons; electrology facilities; spas, including day spas and medical spas, at which solely elective and cosmetic medical procedures are performed; massage parlors, tanning salons, tattoo parlors, and public and private social clubs, whether or not they serve alcohol, including but not limited to facilities owned or operated by the American Legion, Veterans of Foreign Wars, Knights of Columbus, and any other social clubs associated with community service organizations. This excludes any health facilities that provide medically necessary or therapeutic services.

10

h.   All municipal, county, and State public libraries,
and all libraries and computer labs at public and
private colleges and universities.

10.  All businesses or non-profits in the State, whether
closed or open to the public, must accommodate their workforce,
wherever practicable, for telework or work-from-home arrangements.
For purposes of this order, "telework" means the practice of
working from home or alternative locations closer to home through
the use of technology that equips the individual to access
necessary materials.

11.  To the extent a business or non-profit has employees
that cannot perform their functions via telework or work-from-home
arrangements, the business or non-profit should make best efforts
to reduce staff on site to the minimal number necessary to ensure
that essential operations can continue.  Examples of employees who
need to be physically present at their work site in order to
perform their duties include, but are not limited to, law
enforcement officers, fire fighters, and other first responders,
cashiers or store clerks, construction workers, utility workers,
repair workers, warehouse workers, lab researchers, information
technology maintenance workers, janitorial and custodial staff,
and certain administrative staff.

12.  All public, private, and parochial preschool program
premises, and elementary and secondary schools, including charter
and renaissance schools, shall remain closed to students as long
as this Order remains in effect.

13.  All institutions of higher education shall continue to
cease such in-person instruction as long as this Order remains in
effect. The Secretary of the Office of Higher Education shall have
the authority to grant a waiver to allow in-person instruction to
students on a case-by-case basis where a compelling rationale to

11

allow such access exists. The Secretary of the Office of Higher Education shall coordinate with institutions of higher education to determine appropriate student housing conditions for those students who reside in on-campus housing as their primary residence.

14.   The Commissioner of the Department of Education ("DOE"), in consultation with the Commissioner of DOH, shall be authorized to permit schools to remain open on a limited basis for the provision of food or other essential, non-educational services, or for educational or child care services if needed in emergency situations after consultation with the Commissioner of DOH. The Commissioner of DOE shall also have the authority to close any other career or training facilities over which he has oversight, after consultation with the Commissioner of DOH.

15.   The Commissioner of DOE shall continue working with each public school district, and private and parochial schools as appropriate, to ensure that students are able to continue their educations during this time period through appropriate home instruction. Local school districts, charter schools, and renaissance schools, in consultation with the Commissioner of DOE, shall have the authority and discretion to determine home instruction arrangements as appropriate on a case-by-case basis to ensure all students are provided with appropriate home instruction, taking into account all relevant constitutional and statutory obligations.

16.   The Secretary of the Department of Agriculture, in conjunction with the Commissioner of DOE, shall take all necessary actions to ensure that all students eligible for free or reduced meals shall continue to receive the services or supports necessary to meet nutritional needs during closures.

12

17. Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the provision of health care or medical services to members of the public.

18. Nothing in this Order shall be construed to limit, prohibit, or restrict in any way access to essential services for low-income residents, including but not limited to food banks.

19. Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of newspapers, television, radio, and other media services.

20. Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of law enforcement agencies.

21. Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of the federal government, or the movement of federal officials in New Jersey while acting in their official capacity.

22. In accordance with N.J.S.A. App. A:9-33, et seq., as supplemented and amended, the State Director of Emergency Management, who is the Superintendent of State Police, through the police agencies under his control, to determine and control the direction of the flow of vehicular traffic on any State or interstate highway, municipal or county road, and any access road, including the right to detour, reroute, or divert any or all traffic and to prevent ingress or egress from any area that, in the State Director's discretion, is deemed necessary for the protection of the health, safety, and welfare of the public, and to remove parked or abandoned vehicles from such roadways as conditions warrant.

23. The Attorney General, pursuant to the provisions of N.J.S.A. 39:4-213, shall act through the Superintendent of State Police, to determine and control the direction of the flow of

13

vehicular traffic on any State or interstate highway, municipal or county road, and any access road, including the right to detour, reroute, or divert any or all traffic, to prevent ingress or egress, and to determine the type of vehicle or vehicles to be operated on such roadways. I further authorize all law enforcement officers to enforce any such order of the Attorney General or Superintendent of State Police within their respective municipalities.

24.   It shall be the duty of every person or entity in this State or doing business in this State and of the members of the governing body and every official, employee, or agent of every political subdivision in this State and of each member of all other governmental bodies, agencies, and authorities in this State of any nature whatsoever, to cooperate fully in all matters concerning this Executive Order.

25.   Penalties for violations of this Executive Order may be imposed under, among other statutes, N.J.S.A. App. A:9-49 and -50.

26.   This Order shall take effect on Saturday, March 21, 2020, at 9:00 p.m., and shall remain in effect until revoked or modified by the Governor, who shall consult with the Commissioner of DOH as appropriate.

> GIVEN, under my hand and seal this 21st day of March,
> Two Thousand and Twenty, and of the Independence of the United States, the Two Hundred and Forty-Fourth.

[seal]              /s/ Philip D. Murphy

                    Governor


Attest:

/s/ Matthew J. Platkin

Chief Counsel to the Governor